**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**RCB EQUITIES #3, LLC,**

                              **Plaintiff,**

vs.

                                                                   **(MAD/RFT)**

**SKYLINE WOODS REALTY, LLC; HOWARD**         **1:10-CV-1182**
**MARTIN & NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE,**

                              **Defendants.**

---

**APPEARANCES:**                                        **OF COUNSEL:**

SCHILLER, KNAPP LAW FIRM               William B. Schiller, Esq.
950 New Loudon Road
Latham, New York 12110
*Attorneys for Plaintiff*

ZISHOLTZ & ZISHOLTZ, LLP                 Stuart S. Zisholtz, Esq.
170 Old Country Road, Suite 300
Mineola, New York 11501
*Attorneys for Defendants
Skyline Woods Realty, LLC and
Howard Martin*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Presently before the Court is a motion submitted by RCB Equities #3, LLC ("RCB" or "plaintiff") for the following relief: (1) an Order ratifying, adopting and confirming the Report of the Referee pursuant to Fed. R. Civ. P. 53; and (2) entry of judgment pursuant to Fed. R. Civ. P. 54. (Dkt. No. 49). Defendants Howard Martin and Skyline oppose plaintiff's motion and Martin cross moves for summary judgment. (Dkt. No. 50).

## BACKGROUND AND PROCEDURAL HISTORY

Familiarity with the facts and procedural history is assumed based upon this Court's prior Memorandum-Decision and Order dated September 15, 2011 (Dkt. No. 33) and the May 15, 2012 Memorandum-Decision and Order issued by United States Magistrate Judge Randolph F. Treece (Dkt. No. 47). This Court previously awarded plaintiff summary judgment on the claim of foreclosure of the mortgaged property and ordered the foreclosure and sale of the subject property. The Court denied plaintiff's motion for a deficiency judgment against defendant Howard Martin as defendant contested the authenticity of the personal guaranty. Plaintiff's motion was denied without prejudice to renew and granted plaintiff's motion for a default judgment against defendant New York State Department of Taxation and Finance. On September 17, 2011, the Court issued an Order appointing Ralph Coe Lewis, Jr. as Referee to "ascertain and compute the amount due to the Plaintiff for principal, interest and other disbursements advanced as provided for in the note and mortgage upon which this action was brought, to examine and report whether or not the mortgaged premises can be sold in parcels, and that the Referee make his/her report to the Court with all convenient speed". The Court noted that the Referee was subject to the requirements of Rule 53 of the Federal Rules of Civil Procedure.

After the Court issued the decision, defendants served discovery requests including a demand for depositions and interrogatories. On January 20, 2012, plaintiff moved to substitute RCB Equities #3, LLC for the original party, Greystone and for a protective order. On April 19, 2012, a Referee's hearing was held.

On May 15, 2012, Magistrate Judge Treece issued an order granting plaintiff's motion to substitute RCB and amended the caption. With respect to the request for a protective order, Judge

Treece held that defendants could have a Rule 30(b)(6) deposition subject to a protective order limited to the following issues:

> (1) the conversations between Martin and Alex Pierre of Greystone Bank regarding the existence or nonexistence of a personal guaranty, (2) the production of the other related loan documents to see if there is a reference to the personal guaranty, and (3) a discussion relative to the alleged absence of a witness or acknowledgment of the execution of the personal guaranty.

*See* Dkt. No. 47, p. 6.

Any deposition and inspection of the personal guaranty was to be completed by June 30, 2012. On June 26, 2012, Alix Pierre, a Special Asset Officer for Greystone, was deposed.

On July 31, 2012, the Referee filed his report. The Referee found:

> I have ascertained and computed the amounts due plaintiff for principal, interest, escrow deficit, property expenses, and late charges upon the note and mortgage alleged in the complaint herein and find the total amount thereof to be the sum of $3,433,978.10 as of 4/30/12 with continuing interest thereon, from April 30, 2012 to the date of judgment to be awarded herein, at the note rate of 10.56% per annum, or $616.95 per day, all as more fully set forth in Schedule "A" annexed hereto and made a part hereof.

*See* Dkt. No. 48.

## DISCUSSION

### I. Plaintiff's Motion to Confirm Referee's Report

Plaintiff moves for an order confirming the Referee's report. Defendants object arguing that the report lacks evidentiary support because the Referee was not presented with documents establishing the insurance, payments, taxes or principal. Moreover, defendants claim that Alix Pierre, the witness who appeared to testify before the Referee, was not qualified to testify and lacked personal knowledge.

Fed. R. Civ. P. 53(e) provides:

> Master's Reports. A master must report to the court as required by the
> appointing order. The master must file the report and promptly serve
> a copy on each party, unless the court orders otherwise.

Under Federal Rule of Procedure 53(f)(3), the district court is required to "conduct a *de novo* review of all objections to findings of fact made or recommended by the Special Master". *Paone v. Microsoft Corp.*, 771 F.Supp.2d 224, 229 (E.D.N.Y. 2011). "[T]he Court may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed.R.Civ.P. 53(f)(1). The findings of the referee are not final and the Court has the final decision in the dispute and can confirm or reject the referee's report, and make its own findings. *Fed. Deposit Ins. Corp. v. 65 Lenox Rd. Owners Corp.*, 270 A.D.2d 303, 304 (2d Dep't 2000).

It is well-established that the report of a referee shall be confirmed and not disturbed whenever the findings contained therein are substantially supported by the record. *Kaplan v. Einy*, 209 A.D.2d 248, 251, 618 N.Y.S.2d 777, 780 (1st Dep't 1994) (internal citations and citations omitted). "Generally, New York courts will look with favor upon a Referee's report, inasmuch as the Referee, as trier of fact, is considered to be in the best position to determine the issues presented." *Namer v. 152-54-56 W.15th St. Realty Corp.*, 108 A.D.2d 705, 706 (1985). Both oral and documentary evidence may be considered however, the referee may also rely upon sworn testimony alone. *Bd. of Mngrs. of Brightwater Towers Condo. v. Lukashevskaya*, 2012 WL 6031909, at *3 (N.Y. Sup. 2012) (based on the statements in two affidavits and the detailed business records, the referee should have accepted the amounts of the charges as indicated in the affidavits and calculated the amount due based on the documentation provided); *see also Rossrock 2005 Fund LLC v. Estate of Shui Wong*, 19 Misc.3d 1110(A) (N.Y. Sup. 2008) (the referee relied upon the Affidavit of Computation). On questions of credibility, the court defers to the Referee's determination of credibility, which is entitled to "great deference". *Leinwand v. Leinwand*, 203

4

A.D.2d 210 (1st Dep't 1994). "The determination of a Referee appointed to hear and report is entitled to great weight, particularly where [ ] matters of credibility are at issue, since the Referee, as the trier of fact, had the opportunity to see and hear the witnesses and to observe them on the stand". *Hackett v. Hackett*, 2012 WL 669525, at *15 (N.Y.Sup. 2012) (citing *inter alia Slater v. Links at N. Hills*, 262 A.D.2d 299, 299 (1999)).

At the Referee's Hearing, Mr. Pierre testified that he was a Special Assets Officer with Greystone Bank responsible for managing non-performing notes and the foreclosure process. Mr. Pierre became familiar with the subject loan in December 2009 when the loan went into default. During his testimony, Mr. Pierre identified a computer-generated form entitled Calculations of Amounts and stated that it was a record that he regularly kept in his business. According to that document, the principal balance due on the note and mortgage as of December 1, 2009 was $2,103,241.74 and the unpaid interest accrued was $300,038.01 with default interest of $206,117.69. Mr. Pierre testified that no payments had been made since December 1, 2009.

Mr. Pierre also testified with respect to taxes and additional charges:

> Q. Do you have any documents here to substantiate any taxes or any other additional charges?
>
> A. I do not have them with me sir. I do not have documentation that shows the total tax and insurance paid as evidence. <u>I do have a calculation of them</u>. (Emphasis added).[1]

An Affidavit of Computation, sworn to on October 24, 2011, was submitted to the Court. The affidavit contained calculations of the amounts owed on the loan from the time of the default until April 30, 2012. The affidavit was marked as an exhibit during his deposition and Mr. Pierre identified and authenticated the document. Mr. Pierre then testified that the amount due for taxes

---

[1] In defendants' Memorandum of Law (Dkt. No. 50, p. 4), defendants misstate and misquote Mr. Pierre's testimony.

5

was $222,495.46 and $25,164.50 for insurance. Defense counsel objected noting, "let the record reflect that again the witness is testifying from Exhibit B and not from his own personal knowledge of this, of these figures". In response, Mr. Pierre testified:

> Q. Okay. Do you have personal knowledge of the exact amounts that are due on each of the various categories such as taxes, insurance, etc.?
> A. Yes.
> Q. You've got personal knowledge of that to the exact amounts?
> A. Yes.

In his report, the referee referred to and incorporated documents contained in three Schedules, "A", "B" and "C". Schedule "A" set forth the principal balance, interest, late charges, prepayment penalty fees, taxes, blanket insurance charges, inspection and property expenses due. Schedule "B" contains the note and mortgage. Schedule "C" contains, "the sworn deposition of Alix Pierre, Special Asset Officer for Greystone Bank, the original named plaintiff in this action, setting forth the total amount due plaintiff for principal, interest, escrow deficit, property expenses and late charges, upon the note and mortgage underlying this action as of April 30, 2012".

Defendants claim that the Referee's findings are erroneous. Defendants had the opportunity to submit evidence for the referee's consideration and did not do so. Defendants offered no documentary evidence or witness testimony. Defendants present only conclusory allegations in opposition to plaintiff's motion and failed to submit an affidavit detailing the errors in the Referee's calculations or offering their own calculations . *See Woodridge Hotel LLC v. Hotel Lake House Inc.*, 281 A.D.2d 778, 780 (3d Dep't 2001) ("the parties charted their own course as to how the controversy would be resolved by submitting depositions and documentary evidence" and "any error resulting from a Referee not holding a hearing is harmless when the

6

complaining party submits a 'fairly detailed affidavit explaining the perceived errors in the Referee's calculations and delineating its rationale'").

In opposition to the motion, defendants simply argue that Greystone is no longer the note and mortgage holder and therefore, the testimony provided by Mr. Pierre, on behalf of Greystone, should have been disregarded by the referee. Defendants cite to no caselaw in support of that contention. Independent research conducted by the court failed to reveal any support for that argument.

Defendants alternate argument, that Mr. Pierre lacked personal knowledge, is equally flawed. Mr. Pierre clearly stated that he possessed the requisite knowledge. The fact that the witness could not recite the figures without referring to the documents submitted to the Referee and opposing counsel does not render his testimony unreliable. With respect to Exhibit "A", while Mr. Pierre did not input the figures into the system, he reviewed and "doublecheck[ed] all the figures for accuracy" the day prior to the hearing. Having conducted the hearing, the Referee is in the best position to assess the credibility of the witness. Here, the Referee clearly determined that Mr. Pierre possessed the requisite knowledge of the issues at hand and chose to accept his determinations and calculations.

Based upon the record, this Court finds no error in the Referee's decision. Defendants have failed to produce any evidence to persuade this Court to disturb the Referee's findings.

## II. Attorneys' Fees

Plaintiff seeks $30,196.36 in attorneys' fees and $2,340.63 in costs.[2] Defendants object to plaintiff's request for attorneys' fees as unreasonable and unsubstantiated.

---

[2] Plaintiff originally moved for $23,756.79 in attorneys' fees. On September 7, 2012, counsel filed a Supplemental Affirmation stating that plaintiff incurred additional legal fees in replying to defendants' papers and therefore, plaintiff amended its request for fees and now seeks $30,196.36.

7

In the Second Circuit, attorney's fee awards are based on a "presumptively reasonable fee" reached by multiplying the hours reasonably expended by the reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). A court determines the hours reasonably expended by reviewing contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Here, the record lacks sufficient information to allow this Court to award a reasonable amount for attorneys' fees and costs. Plaintiff has not provided copies of contemporaneous time records or invoices demonstrating attorneys' fees and costs incurred as a result of the within action. Plaintiff's submission includes an Declaration of William B. Schiller wherein counsel avers that, "[a]s of the date of this declaration, fees for legal services rendered in this matter total $23,096.79" and information regarding "prospective legal services". However, the declaration does not include information regarding counsel's background and experience and the customary fees and/or hourly rate charged for similar legal services. *See E. Savings Bank, FSB v. Rabito*, 2012 WL 3544755, at *7 (E.D.N.Y. 2012) (in addition to a judgment of foreclosure and sale, plaintiff sought attorneys' fees but failed to submit contemporaneous time records and documents regarding costs incurred during the course of litigation); *see also Imaging Fin. Serv., Inc. v. Digital Page, LLC*, 2012 WL 913257, at *3 (N.D.N.Y. 2012) (the plaintiff failed to submit documentation of either the attorneys' hourly rate or the number of hours spent on this matter, and therefore cannot determine whether the requested fees and costs are reasonable). Accordingly, plaintiff's motion is denied. However, the Court will allow plaintiff to supplement the request for

fees with the aforementioned information. *See Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A., Inc*., 253 F.Supp.2d 578, 587 (S.D.N.Y.2003).

**III.     Defendant Martin's Cross Motion for Summary Judgment**

Defendant cross moves for summary judgment claiming that RCB does not have standing to pursue the deficiency claim against Martin because the assignment from Greystone Bank to RCB does not incorporate the payment guaranty. Plaintiff argues that the "loan documents" are to be treated as a unified agreement and that the payment guaranty executed by Howard Martin was properly transferred to RCB.[3]

**A.     Standard for Summary Judgment**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©. Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id*. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

---

[3] Plaintiff argues, "to the extent defendants argument asserts otherwise, they are barred from re-litigating issues that have been resolved against them". Plaintiff does not identify which issue was already resolved.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen 'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56©).

**B.     Analysis**

In support of the motion, defendant relies upon a case from the New York State Supreme Court. In *East W. Bank v. 32 Tower, LLC*, 33 Misc.3d 1221(A) (N.Y. Sup. 2011), the individual defendants moved to dismiss the complaint arguing that the guaranties were not included in the assignment of the mortgage and note. The Court noted that:

> According to the terms of the assignment instrument, the FDIC assigned the "mortgage and related documents recorded" against the premises and all " promissory notes(s), note consolidation and/or modification agreements, and related unrecorded documents evidencing indebtedness secured by the Mortgages, and all sums payable under the foregoing."

The Court also noted that, "the assignment does not expressly state that any 'guaranties' were assigned". *Id*. Since the guarantee was "collateral to the debt itself", the court held that the "plaintiff has failed to establish standing to maintain this action against the guarantors inasmuch as the underlying guarantees were never assigned by the FDIC." *Id*.

10

Here, defendant relies upon this case arguing that, "[t]he language of the assignment in *East West Bank*, is very similar to the language in the assignment in this action".[4] Defendant cites to no other caselaw in support of the motion for summary judgment.

The Court is not persuaded by the holding of the state court as there is no evidence that the cases are factually analogous. In this matter, the Mortgage defines "Loan Documents" as:

> . . . the Note, this Instrument, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Programs, and any other documents now or in the future executed by Borrower, Key Principal, any guarantor or any other person in connection with the loan evidenced by the Note, as such documents may be amended from time to time.

The Payment Guaranty indicates that the Guarantor "hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment when due [ ]". The Guarantor further agreed that the, "obligations under this Guaranty constitute an unconditional guaranty of payment and not merely a guaranty of collection".

The Assignment states:

> A.    Assignor is the legal and equitable owner and holder of that certain Amended and Restated Multifamily Note in the original principal amount of $2,150,000.00 dated October 3, 2007 (the "Note"), which Note is secured by, among other things, that certain [. . . ]

The document further provides:

> NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:
>
> 1.    Assignor hereby absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, its successors and assigns, and Assignee hereby accepts, all of Assignor's right, title and interest in and to the

---

[4] The court cited to portions of the assignment in the decision but the entire document was not annexed to the court's decision and is not part of the record herein.

> Mortgage, together with the bonds, notes or other obligations incurred thereby and all rights of the Assignor related to such Mortgage, bonds or notes.

The Court has reviewed all three documents and finds that the intent of the parties and the documents are ambiguous. The Payment Guaranty does not contain unambiguous language establishing that it would be viewed, with the mortgage and note, as a single document or that it would run directly to the assigns of Greystone. Conversely, there is no provision in the Payment Guaranty that requires the parties to specifically assign rights under the Payment Guaranty to a third party for a third party to acquire said rights. *See e.g., Tammac Corp. v. Williams*, 1993 WL 330639, at *15-16 (W.D.N.Y. 1993) (the guaranty contained unambiguous provisions that it would be construed as part of the Agreement and would run to the assigns of Tammac Financial). The parties presently drastically different views regarding the parties' objectives in entering the Assignment and the documents are ambiguous as to the parties' intent. Defendant has not presented sufficient evidence to establish that it is entitled to judgment as a matter of law on this issue. Factual disputes of this nature create questions of fact to be resolved by a jury precluding summary judgment.

The Court notes that plaintiff has opposed the motion arguing that it is "premature" because plaintiff has not yet renewed its motion for summary judgment on this issue. The motion may be premature, but not for the reasons set forth by plaintiff. Defendant's motion makes no reference and takes no position on the authenticity of the personal guaranty. While Mr. Pierre was deposed, at length, pursuant to Magistrate Judge Treece's Order, the issues relating to whether the personal guaranty is authentic are not before this Court. Defendant clearly states, "[t]he assignment did not include the payment guaranty, <u>whether it was executed by Howard Martin or not</u>". *See* Dkt. No. 56, p. 5. (Emphasis added). Therefore, the sole argument in support of

summary judgment is that the personal guaranty was not part of the assignment from Greystone to RCB. However, that issue is for a jury to determine only in the event of a deficiency following the sale of the property. As noted above, a judgment of foreclosure and sale will be entered forthwith. Even assuming Martin would be personally liable, plaintiff first must establish that the debt is not fully or substantially satisfied as the result of a sale. *See East West Bank v. 32 Tower, LLC*, 35 Misc.3d 1235(A) (N.Y.Sup. 2012).

## CONCLUSION

It is therefore

**ORDERED**, that plaintiff's motion (Dkt. No. 49) to adopt the referee's report is **GRANTED**; it is further

**ORDERED**, that plaintiff's motion for attorneys' fees and costs (Dkt. No. 49) is **DENIED** with leave to renew within thirty days of this Order; it is further

**ORDERED**, that defendant Martin's motion for summary judgment (Dkt. No. 50) is **DENIED**.

The Court will enter a Judgment of Foreclosure and Sale under separate Order.

**IT IS SO ORDERED.**

Dated: March 11, 2013
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge