**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RCB EQUITIES #3, LLC,**

                                        **Plaintiff,**

        **vs.**                                              **1:10-cv-1182**
                                                             **(MAD/RFT)**

**SKYLINE WOODS REALTY, LLC, and**
**HOWARD MARTIN,**

                            **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**SCHILLER & KNAPP, LLP**                 **WILLIAM B. SCHILLER, ESQ.**
950 New Loudon Road                       **GARY A. LEFKOWITZ, ESQ.**
Latham, New York 12110
Attorneys for Plaintiff

**ZISHOLTZ & ZISHOLTZ, LLP**              **STUART S. ZISHOLTZ, ESQ.**
170 Old Country Road, Suite 300
Mineola, New York 11501
Attorneys for Defendants
Skyline Woods Realty, LLC and
Howard Martin


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        On October 1, 2010, Plaintiff RCB Equities #3, LLC ("RCB")'s predecessor-in-interest,

Greystone Bank ("Greystone"), commenced this action to foreclose a lien on real property located

at 4 Skyline Drive, Saugerties, Ulster County, New York (the "Skyline Property"). Dkt. No. 1.

The Court assumes the parties' familiarity with the facts of this case, as discussed in its prior

orders, and discusses only the facts relevant to disposition of the instant motions.

In a September 15, 2011 Memorandum-Decision and Order, the Court granted Greystone's motions for summary judgment on the claim of foreclosure of the mortgaged property and default judgment against Defendant New York State Department of Taxation and Finance. Dkt. No. 33. The Court then appointed Ralph C. Lewis, Jr. as Referee to ascertain and compute the amount due Plaintiff under the mortgage and note. Dkt. No. 37. On May 15, 2012, Magistrate Judge Randolph F. Treece granted Greystone's motion to substitute Plaintiff. Dkt. No. 47. In a March 11, 2013 Memorandum-Decision and Order, the Court granted Plaintiff's motion to adopt the Referee's report. Dkt. No. 57. On June 7, 2013, the Court entered a judgment of foreclosure and sale. Dkt. No. 62; Dkt. No. 63. In a June 11, 2014 Memorandum-Decision and Order, the Court granted Plaintiff's motions to reopen the case, to confirm the Referee's Report of Sale, and for leave to file a deficiency judgment as to Defendant Skyline Woods Realty, LLC ("Skyline"), and denied Plaintiff's motion for leave to file a deficiency judgment as to Defendant Howard Martin ("Defendant Martin") based on triable issues of fact with respect to Defendant Martin's individual liability. Dkt. No. 79.

The Court held a bench trial on October 1, 2014 solely on the issue of Defendant Martin's liability as personal guarantor of the mortgage instruments at issue. At trial, Plaintiff introduced by deposition the testimony of Ted J. Abruzzo, Esq., an attorney at Greystone who oversaw the Skyline Property mortgage closing;[1] called as witnesses Allison Berman, deputy general counsel of Greystone's parent company, Greystone and Company, and former head of the Greystone

---

[1] When the transcript of Mr. Abruzzo's deposition was received in evidence, the Court directed the parties to submit post-trial filings specifically identifying the deposition objections they desired to stand on, which the Court would rule on in this decision. *See* Dkt. No. 99 at 1. Following trial, Plaintiff filed a notice withdrawing its deposition objections, Dkt. No. 101, while Defendant Martin declined to file notice of any deposition objections he desired to preserve. Accordingly, the Court need not rule on any objections raised at Mr. Abruzzo's deposition.

special assets group, and Avi Ryzman, an RCB employee involved in RCB's purchase of the

Skyline Property mortgage from Greystone; and introduced a brief excerpt from the deposition

testimony of Alix Pierre, a former Greystone special assets group employee involved in the

Skyline Property mortgage transaction.  Defendant called as an expert James B. Zucker, Esq., a

partner at the law firm Zucker & Kwestel, LLP, and Defendant Martin.

 Having carefully reviewed the parties' pre-trial submissions and all of the evidence at trial,

the Court makes the following findings of fact and conclusions of law.

## II.  FINDINGS OF FACT[2]

**A. Execution of the Mortgage Documents**

5. In September 1997, Skyline Realty Corp., then owner of the Skyline Property, executed a

 mortgage on the property securing a principal amount of $750,000.00 to County Bank (the

 "First Mortgage").  Dkt. No. 33 at 2.  County Bank assigned the First Mortgage to

 Valuexpress II, Inc., which assigned it to Daiwa Finance Corp.  Plf's Exh. 1 at 2-3.

 Skyline purchased the Skyline Property from Skyline Realty Corp. and assumed the First

 Mortgage by a Consent and Assumption Agreement with Daiwa Finance Corp., which

 Defendant Martin personally guaranteed and signed as guarantor.  *Id.* at 5, 17.[3]

6. In 2007, a broker approached Defendant Martin to initiate a refinance agreement

 pertaining to the First Mortgage with Greystone.  Transcript of Trial (Tr.) at 170-71.

---

[2]  The Court's findings of fact are derived both from the undisputed facts in the parties' previous filings and from the Court's findings based upon the trial transcript and exhibits.

[3] A series of assignments not relevant here followed.

7. In connection with the refinance, Defendant Martin submitted a loan application to Greystone that included financial information on Skyline and on Defendant Martin personally, including Defendant Martin's personal tax returns. *Id.* at 13-14, 185.

8. In October 2007, the First Mortgage was assigned to Greystone, and Greystone agreed to loan Skyline an additional $1,517,259.58 and to consolidate the mortgage loans into one loan. *Id.* at 12, 18.

9. Greystone initially prepared the loan documents to be executed by Defendants. Ct's Exh. 1 at 6. On or about October 2, 2007, Greystone emailed Ted Abruzzo, Greystone's closing attorney, the following documents to be executed: (1) Greystone Bank Closing Statement; (2) Multifamily Note in the amount of $2,150,000.00 made by Borrower for the benefit of Lender; (3) Multifamily GAP Note in the amount of $1,517,259.58 made by Borrower for the benefit of Lender (the "GAP Note"); (4) Multifamily Mortgage, Assignment of Rents, Security Agreement and Fixture Filing with Riders; (5) Multifamily GAP Mortgage, Assignment of Rents, Security Agreement and Fixture Filing with Riders (the "Second Mortgage"); (6) Payment Guaranty; (7) Certificate of Borrower; (8) Agreement to Amend or Comply; (9) Acknowledgment of Waiver of Counsel; (10) Real Estate Tax Authorization form; (11) W-9 Form - Skyline Wood Realty LLC; (12) ACH Debit Authorization; (13) UCC Financing Statements - Ulser County; and (14) One UCC Financing Statement - New York Secretary of State. Plf's Exh. 2; Ct's Exh. 1 at 6.

10. Mr. Abruzzo reviewed the loan documents provided to him by Greystone and modified the Multifamily Note to an Amended and Restated Multifamily Note (the "Consolidated Note") and the Multifamily Mortgage, Assignment of Rents, Security Agreement and

Fixture Filings with Riders to a Consolidation, Extension and Modification Agreement (the "Skyline Consolidated Mortgage"). Ct's Exh. 1 at 9-19.

11.    Mr. Abruzzo provided the Consolidated Note, Skyline Consolidated Mortgage, and loan documents prepared by Greystone to a member of his staff to present to Defendant Martin for execution. Ct's Exh. 1 at 31-32.

12.    On October 3, 2007, at his broker's instruction, Defendant Martin appeared at the office of Weissman & Abruzzo, LLP to execute the closing documents. Ct's Exh. 1 at 26-27; Tr. at 172-73. He did not request to review the closing documents prior to the closing. Tr. at 186.

13.    Prior to the 2007 refinancing, Defendant Martin had participated in many real estate transactions in New York and Florida. *Id.* at 181. He appeared at the October 2007 closing without an attorney, and waived his right to have counsel at the closing because he "was hungry for the check." *Id.* at 182.

14.    A paralegal employed by Mr. Abruzzo oversaw Defendant Martin's execution of the documents. Ct's Exh. 1 at 41. Neither Mr. Abruzzo nor his employees advised Defendant Martin as to the contents of the closing documents. Ct's Exh. 1 at 46-48; Tr. at 177.

15.    Defendant Martin signed the documents presented to him by Mr. Abruzzo's employee without reviewing them and received a check for the loan proceeds. Tr. at 173, 186.

16.    He did not receive copies of the documents he signed or a closing statement. *Id.* at 173.

17.    At the conclusion of the closing, a title company representative retained the documents which were required to be recorded. Ct's Exh. 1 at 28. Mr. Abruzzo's firm sent the closing documents which were not required to be recorded to Greystone. *Id.* at 28, 48, 55.

18. Defendant Martin returned to the offices of Weissman & Abruzzo on October 4, 2007 to sign additional documents related to the closing which had been missed the day before. Tr. at 174. Neither Defendant Martin nor Mr. Abruzzo could recall which specific document or documents were signed by Defendant Martin on October 4. Ct's Exh. 1 at 42; Tr. at 174.

**B.    The Payment Guaranty**

19. Greystone prepared the GAP Note and Consolidated Note as recourse loans, which recourse to a principal of the borrower (here, Skyline) and require personal payment guaranties. Ct's Exh. 1 at 22-23; Tr. at 12-13, 91-92.

20. Each page of the GAP Note and Consolidated Note included a caption which read "Multifamily Recourse Fixed Rate Note – NY (Multistate)." Plf's Exh. 3; Plf's Exh. 4. Paragraph nine of each Note reads "[Intentionally Deleted.]" Plf's Exh. 3; Plf's Exh. Greystone customarily includes the "intentionally deleted" language in paragraph nine of its recourse notes to denote that a provision specific to non-recourse notes has been omitted. Ct's Exh. 1 at 24.

21. The Consolidated Note was based on a Fannie Mae express loan program, under which Greystone's policy was to obtain personal guaranties on the full amount of the loan. Tr. at 95-96.

22. At trial, Plaintiff produced a copy of a payment guaranty of the Consolidated Note dated October 3, 2007, which bore what appeared to be Defendant Martin's signature (the "Payment Guaranty"). Plf's Exh. 8.

23.    Plaintiff did not produce the original Payment Guaranty.  Tr. at 93-94, 106-07.  Prior to

trial, Defendant Martin inspected the original document and had the opportunity to have it

reviewed by an expert if desired.  *Id.* at 106-07.

24.    Plaintiff obtained the copy of the Payment Guaranty produced at trial from the business

records of Greystone and Company.  Tr. at 30.  The Payment Guaranty was initially sent

from Mr. Abruzzo's office to the Greystone express loan office, which forwarded it to

Greystone, which delivered it to Greystone's loan servicer, which provided it to Greystone

and Company.  *Id.* at 30-31, 90.

25.    The Payment Guaranty stated, in relevant part:

> This Payment Guaranty ("**Guaranty**") is entered into as of
> **October 3, 2007,** by the undersigned (collectively, the
> "**Guarantor**" whether one or more), for the benefit of
> **GREYSTONE BANK,** and/or any subsequent holder of the Note
> (the "**Lender**").
>
> RECITALS
>
> A. **SKYLINE WOODS REALTY LLC,** a New York
> limited liability company, with an address at 45 Murray Hill Road,
> Scarsdale, New York 10583 (the "**Borrower**") has requested that
> Lender make a loan to Borrower in the amount of **$2,150,000.00**
> (the "**Loan**").  The Loan will be evidenced by a Multifamily Note
> from Borrower to Lender dated as of the date of this Guaranty (the
> "**Note**").  The Note will be secured by a Multifamily Mortgage,
> Deed of Trust, or Deed to Secure Debt dated the same date as the
> Note (the "**Security Instrument**"), encumbering the real property
> described in the Security Instrument (the "**Property**").
>
> B. Guarantor has an economic interest in Borrower or will
> otherwise obtain a material financial benefit from the Loan.
>
> C. As a condition to making the Loan to Borrower, Lender
> requires that the Guarantor execute this Guaranty.
>
> NOW, THEREFORE, in order to induce Lender to make the
> Loan to Borrower, and in consideration thereof, Guarantor agrees as
> follows:

1. "Indebtedness" and other capitalized terms used but not defined in this Guaranty shall have the meanings assigned to them in the Security Instrument.

2. Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, and the full and prompt performance when due, of all of the following:

(a) The entire Indebtedness.

(b) The payment and performance of all of Borrower's obligations under Section 18 of the Security Instrument.

(c) All costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty.

3. The obligations of Guarantor under this Guaranty shall survive any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the Security Instrument.

. . . .

12. Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of such assignee to the extent so assigned. The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

. . . .

**IN WITNESS WHEREOF**, Guarantor has signed and delivered this Guaranty or has caused this Guaranty to be signed and delivered by its duly authorized representative.

Plf's Exh. 8 (emphasis in original).

26.    Defendant Martin testified that his understanding of the Consolidated Note and Mortgage

was that he had no personal obligations under the loan and that he believed he was only

personally liable for the $750,000 First Mortgage.  Tr. at 176-77.  He denied that he had

executed a payment guaranty of the Consolidated Note.  Tr. at 175; 186.

27.    Defendant Martin agreed that the signature on the Payment Guaranty appeared to be his.

*Id.* at 175, 186.

28.    Defendant Martin's signature on the Payment Guaranty is not acknowledged.  *See* Plf's

Exh. 8.  Acknowledgments are not generally required for documents that are not required

to be recorded, and guaranties are not required to be recorded.  Tr. at 34; Ct's Exh. 1 at 26.

Greystone based the Payment Guaranty on a Fannie Mae guaranty form that did not

require an acknowledgment.  Tr. at 34; Ct's Exh. 1 at 26.

29.    Defendant Martin's signature is on the last page of the Payment Guaranty, which read "In

witness whereof, Guarantor has signed and delivered this Guaranty or has caused this

Guaranty to be signed and delivered by its duly authorized representative."  Plf's Exh. 8 at

5 (emphasis omitted).  The page bearing Defendant Martin's signature contains a footer

which read "Payment Guaranty - New York (Multistate)."  *Id.*  The first four pages of the

Payment Guaranty contained an identical footer.  *Id.* at 1-4.  Greystone customarily uses

such footers to connect multiple pages of a document to each other.  Tr. at 35.

30.    Ms. Berman testified that, to her knowledge, the original Payment Guaranty had not been

modified or amended in any way since it was executed in October 2007.  *Id.* at 96.

31.    At trial, Defendant Martin produced three copies of the Payment Guaranty, which

appeared to have been obtained from the electronic docket for this case.  Tr. at 97-101.

On Defendant's Exhibits K and L, the loan number and Defendant Martin's social security

number have been redacted.  Def's Exh. K; Def's Exh. L.  On Defendant's Exhibit M, the

first five digits of the loan number and Defendant Martin's social security number have

been redacted.  Def's Exh. M.  Otherwise, the copies are identical to the Payment

Guaranty produced by Plaintiff.  *See* Plf's Exh. 8.

**C.    Assignment to RCB**

32.    On April 28, 2011, Greystone and Plaintiff entered into an agreement that Greystone

would sell and Plaintiff purchase a package of mortgage loans (the "Sale Agreement").

Plf's Exh. 12.  The Skyline Consolidated Mortgage was one of the loans included in the

Sale Agreement.  *Id.* at Schedule A-1; Tr. at 39-40.

33.    The Sale Agreement provided, in relevant part:

> WHEREAS, Seller made or acquired the mortgage loans
> described on Schedule A-1 attached hereto (collectively, the
> "**Mortgage Loan**"), each of which are secured by a mortgage, deed
> of trust, security deed, or any other instrument which constitutes a
> lien (collectively, the "**Mortgage**") on the real property described
> on Schedule A-1 attached hereto (collectively, the "**Mortgaged
> Property**").
>
> WHEREAS, Seller or a wholly owned subsidiary of Seller
> acquired through foreclosure the commercial real estate properties
> described on Schedule A-2 attached hereto (collectively, the
> "**REO**", together with the Mortgage Loan, the "**Assets**").
>
> . . . .
>
> **SECTION 1.  Agreement to Purchase**.  On the Closing
> Date, Seller agrees to sell, and Purchaser agrees to purchase, on the
> terms and conditions stated herein, the Assets [including the
> Skyline Property mortgage] having an unpaid principal balance as
> of the date hereof in the amount set forth on Exhibit A-1 and
> Exhibit A-2, as applicable . . . .  Such conveyance includes, without
> limitation, all servicing rights and the right to all payments of
> interest, principal, penalties, fees, charges and other amounts
> received or receivable on or in respect of the Assets after the
> Closing Date, together with all of the Seller's right, title and interest
> in and to the loan documents and such other documents set forth on
> Exhibit A hereto (the "**Asset File**"), any applicable custodial
> agreement, and all right, title and interest of Seller in and to those
> certain actions more fully described on Schedule B attached hereto

(collectively, the "**Action**"), and any and all proceeds of the foregoing.

. . . .

SECTION 4.  **Representations, Warranties and Covenants of Seller**.  Seller represents and warrants to, and covenants with, Purchaser as of Closing Date:

. . . .

(b) It has the full power and authority to sell the Assets and to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement. . . .

. . . .

SECTION 6.  **Closing Documents**.  The closing documents to be delivered on the Closing Date (the "**Closing Documents**") shall consist of each of the following:

. . . .

(c) a bill of sale and assignment with respect to each document in the Asset File by Seller in favor of Purchaser or its designee (a form of which is attached hereto as <u>Annex C</u>) . . . .

Plf's Exh. 12 at 1 (emphasis in original).

34.   Exhibit A to the Sale Agreement, entitled "Contents of Asset File," read: "With respect to

the Mortgage Loan, the Asset File shall include each of the following items: (a)

Fixed/Adjustable Rate Term Note; (b) Commercial Mortgage and Security Agreement and

Assignment of Leases and Rents; (c) W-9's; (d) UCC-1 Financing Statement; and (e) Title

Policy."  *Id.* at Exhibit A (emphasis omitted).

35.   Schedule B to the Sale Agreement, which listed six pending civil actions to which

Greystone was a party, included the present case.  *Id.* at Schedule B.

36.   Mr. Ryzman negotiated the terms of the Sale Agreement on behalf of Plaintiff.  Tr. at 110.

The criteria Plaintiff used in determining which loans to purchase from Greystone

included the loan location, size, and value, the status of default or other deficiency, and the existence of a personal guaranty. Tr. at 111-12.

37.    Prior to reaching the Sale Agreement with Greystone, Mr. Ryzman discussed the status of the mortgage and pending foreclosure action with Greystone employees and reviewed Defendant Martin's loan application, operating profit and loss statements for the Skyline Property, and the loan documents, including the Payment Guaranty. *Id.* at 109-11, 134. He also obtained a broker opinion as to the value of the Skyline Property. *Id.* at 133.

38.    Mr. Ryzman did not run a credit check on Defendant Martin nor did he validate the information in Defendant Martin's loan application. *Id.* at 123-24.

39.    Mr. Ryzman never visited the Skyline Property in person. *Id.* at 118. He did visit five of the other six mortgaged properties and both of the real estate owned properties included in the Sale Agreement before agreeing to the purchase. *Id.* at 118-19.

40.    Mr. Ryzman testified that Plaintiff would not have agreed to purchase the Skyline Consolidated Mortgage if it did not have a payment guaranty. *Id.* at 111.

41.    Pursuant to the Sale Agreement, on April 28, 2011, Greystone executed a Bill of Sale and Assignment to Plaintiff, which stated, in relevant part:

> FOR VALUE RECEIVED, **GREYSTONE BANK** ("**Assignor**") hereby sells, assigns and transfers unto **RCB EQUITIES #3, LLC**, a California limited liability company having an address at 5967 West 3rd St., Suite #102, Los Angeles, CA 90036 (collectively, "**Assignee**"), as of April 28, 2011, all right, title and interest of Assignor in, to and under or arising out of that certain mortgage loan in the original principal amount of $2,150,000 (the "**Loan**") which is evidenced, secured by and more particularly described in those documents set forth in Exhibit A attached hereto and made a part hereof (collectively, the "**Loan Documents**"), secured by the real property known as 4 Skyline Drive, Saugerties, NY 12477, together with all right, title and interest of Assignor in, to and under or arising out of:

1)    the Loan Documents;

2)    all guaranties, insurance policies, indemnifications, releases, affidavits, legal opinions, certificates, title insurance policies, certificates of deposit, letters of credit and other documents executed and/or delivered to Assignor in connection with the Loan;

. . . .

5)    all demands, claims, causes of action and judgments relating to any of the foregoing and all rights accrued or to accrue thereunder.

To have and to hold the same unto Assignee, its successors and assigns, forever.

Plf's Exh. 10 (emphasis in original).

42.    Ms. Berman, who prepared the Bill of Sale and Assignment, testified that its purpose was to transfer the assets identified in the document to the assignee, Plaintiff.  Tr. at 44, 65. Defendant Martin's expert, Mr. Zucker, testified that a bill of sale generally confirms that a transaction occurred between a seller and a buyer and records the terms of that transaction, and that an assignment actually transfers the assets being sold.  *Id.* at 167-69.

43.    On April 28, 2011, Greystone also executed an Assignment of Consolidation, Extension and Modification Agreement (the "Skyline Mortgage Assignment"), which read, in relevant part:

A. Assignor is the legal and equitable owner and holder of that certain Amended and Restated Multifamily Note in the original principal amount of $2,150,000.00 dated October 3, 2007 (the "**Note**"), which Note is secured by, among other things, that certain

(i) Mortgage, Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents made by SKYLINE REALTY CORP, a New York Corporation, to Country Bank, in the original principal amount of $750,000.00, dated September 22, 1997 . . .

. . . .

(ii) GAP Multifamily Mortgage, Assignment of Rents and Security Agreement made by SKYLINE WOODS REALTY LLC, a New York limited liability company, to Greystone Bank, in the original principal amount of $1,517,259.58 dated October 3, 2007 . . .

which mortgages (i) and (ii) were modified and consolidated to form a single lien by . . . Consolidation, Extension and Modification Agreement dated October 2, 2007, executed by SKYLINE WOODS REALTY LLC, a New York limited liability company, as Mortgagor, and Greystone Bank, as Mortgagee . . . (which two mortgages, as so assigned and consolidated, are collectively referred to herein as the "**Mortgage**"),

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1. Assignor hereby absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, its successors and assigns, and Assignee hereby accepts, all of Assignor's right, title and interest in and to the Mortgage, together with the bonds, notes, or other obligations incurred thereby and all other rights of the Assignor related to such Mortgage and bonds and notes.

Plf's Exh. 9 (emphasis in original).

44.    Ms. Berman testified that she prepared the Skyline Mortgage Assignment in addition to the Bill of Sale and Assignment because the mortgage assignment served as a recorded document to show on the record who holds the mortgage.  Tr. at 65.  The Skyline Mortgage Assignment listed only the recorded documents assigned by Greystone to Plaintiff.  *Id.*

45.    Neither the Skyline Mortgage Assignment nor the Sale Agreement specifically list the Payment Guaranty or include any reference to Defendant Martin.  Plf's Exh. 9; Plf's Exh. 12; Tr. at 60, 64, 76.

14

46.  On April 28, 2011, pursuant to the Sale Agreement, Greystone also executed an Assignment of Mortgage regarding a mortgage executed by Alma Building, LLC (the "Alma Assignment").  Def's Exh. P.  The Alma Assignment included a paragraph which read: "Assignor has simultaneously herewith endorsed the Note to Assignee and the parties desire that the Note, the Mortgage and all other documents executed in connection with the Note be assigned to Assignee."  *Id.*  This language did not appear in the Skyline Mortgage Assignment.  *See* Plf's Exh. 9; Tr. at 70-71.

47.  Greystone based the Skyline Mortgage Assignment on a form for assigning consolidated mortgages, which had different language than the form for assigning a single mortgage on which the Alma Assignment was based.  Tr. at 71.

48.  Ms. Berman testified that Greystone's desire "was to transfer everything and I feel between [the Skyline Mortgage Assignment] and the Bill of Sale, it does."  *Id.*  She also stated that she "look[ed] closely at [the Bill of Sale and Assignment] to make sure it included the guaranties because we knew that was being transferred with the loan."  *Id.* at 82.

49.  Mr. Ryzman testified that Plaintiff's intention was to purchase the personal guaranties and that the purchase of the guaranties was a condition of the agreement between Greystone and Plaintiff.  *Id.* at 113.

50.  Defendant's expert, Mr. Zucker, testified that in his opinion, the Sale Agreement and assignments did not transfer the Payment Guaranty to Plaintiff.  *Id.* at 158-60.  He noted that he "[didn't] know if anything needed to be included within [the mortgage assignment] to address an assignment guaranty," but that the language of the mortgage assignment clearly did not assign the payment guaranty.  *Id.* at 160-61.

51.    Mr. Zucker further testified that to assign a payment guaranty, he would either include the

guaranty assignment language in the mortgage assignment or prepare a separate document

assigning the guaranty, which might also assign other documents. *Id.* at 161.

### III. CONCLUSIONS OF LAW

**A.    Relevant Standards**

"In a bench trial such as this, it is the Court's job to weigh the evidence, assess credibility,

and rule on the facts as they are presented." *Bahrami v. Ketabchi*, No. 05 Civ. 3829, 2009 WL

513790, *9 (S.D.N.Y. Feb. 27, 2009) (quoting *Johnson-McClean Techs. v. Millennium Info. Tech.*

*Group*, No. 02 Civ. 244, 2003 WL 192175, *8 (S.D.N.Y. Jan. 27, 2003)) (internal quotation

marks and alterations omitted); *see also Mathie v. Fries*, 121 F.3d 808, 811-12 (2d Cir. 1997).

"The Court [is] 'in the best position to evaluate [each] witness's demeanor and tone of voice as

well as other mannerisms that bear heavily on one's belief in what the witness says.'" *Bahrami*,

2009 WL 513790, at *9 (quoting *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d

623, 634 (2d Cir. 1996)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)

(noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that

bear so heavily on the listener's understanding of and belief in what is said").  If the "evidence is

equally divided . . . 'the party with the burden of proof loses.'" *Bahrami*, 2009 WL 513790, at *9

(quoting *U.S. v. Gigante*, 39 F.3d 42, 47 (2d Cir. 1994)); *see also Fulop v. Malev Hungarian*

*Airlines*, 244 F. Supp. 2d 217, 223 (S.D.N.Y. 2003) ("The evidence on this issue is substantially

divided and, in the Court's assessment, does not tilt sufficiently to Plaintiff's case to satisfy the

preponderance standard.").

**B.       The Authenticity of the Payment Guaranty**

Plaintiff has moved pursuant to Section 1371 of the New York Real Property Actions and Proceedings Law ("RPAPL") for a deficiency judgment against Defendant Martin. Section 1371(1) of the RPAPL provides that in a mortgage foreclosure suit,

> [i]f a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

N.Y.R.P.A.P.L. § 1371(1). A mortgagee establishes prima facie entitlement to a deficiency judgment against a guarantor by proffering evidence that the defendant personally guaranteed the debt and the debt was in default. *LibertyPointe Bank v. 7 Waterfront Prop., LLC*, 942 N.Y.S. 2d 610, 611 (2d Dept. 2012); *Pollina v. Blatt*, 691 N.Y.S. 2d 156, 157 (2d Dept. 1999). "[W]here the mortgage holder establishes the basic elements of a cause of action for foreclosure, the mortgage holder is entitled to a presumptive right to collect, which can only be overcome by an affirmative showing from the defendant." *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991).

Here, there is no dispute that the debt was in default. Plaintiff also proffered evidence that Defendant Martin personally guaranteed the debt by producing a copy of the Payment Guaranty bearing Defendant Martin's signature. *See* Dkt. No. 19-4. As the Court found in its September 15, 2011 and June 11, 2014 Memorandum-Decision and Orders, Defendant produced sufficient evidentiary proof that he did not sign the Personal Guaranty to raise a triable issue of fact. Dkt. No. 33 at 9-11; Dkt. No. 79 at 10-12. Thus, the burden shifted back to Plaintiff to prove by a preponderance of the evidence that the signature on the Payment Guaranty is genuine. *See OEC*

17

*Freight (N.Y.), Inc. v. Philip Whitney, Ltd.*, No. 09-CV-2489, 2011 WL 5513445, *1 (E.D.N.Y. Nov. 10, 2011) (requiring the plaintiff to prove the genuineness of the defendant's signature on a personal guarantee by a preponderance of the evidence); *Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F. Supp. 208, 212 (S.D.N.Y. 1985) ("[P]laintiff has failed to prove, by a preponderance of the credible evidence, that the signature guarantee stamp was genuine and signed by [the defendant].").[4]

The Court finds that Plaintiff proved the signature on the Payment Guaranty is Defendant Martin's genuine signature by a preponderance of the evidence. Plaintiff presented evidence, by way of the email from Greystone to Mr. Abruzzo dated October 2, 2007 and Mr. Abruzzo's deposition testimony, that the Payment Guaranty was one of the documents presented to Defendant Martin for his signature at the refinance closing. Defendant Martin testified that at the closing and when he returned to Mr. Abruzzo's office the next day, he signed all of the documents given to him to execute. Mr. Abruzzo testified that his office provided the documents executed by Defendant Martin to Greystone. Ms. Berman testified that the Payment Guaranty produced at trial was part of Greystone and Company's records that Greystone received from Mr. Abruzzo related to the refinancing and that, to her knowledge, it had not been modified in any way since its execution.

The sole evidence Defendant Martin introduced at trial to dispute the authenticity of the Payment Guaranty was Defendant Martin's testimony that he did not execute a payment guaranty

---

[4] Under New York law, notarization of a signature creates a presumption that the signature is authentic. *Orix Credit Alliance, Inc. v. Khoury*, No. 94-CV-2083, 1995 WL 2133 (S.D.N.Y. 1995) (citing *Son Fong Lum v. Antonelli*, 476 N.Y.S. 2d 921, 923 (2d Dept. 1984), *aff'd*, 490 N.Y.S. 2d 733 (1985)). Where, as here, the signature on the Payment Guaranty is not notarized, there is no presumption of due execution. *TD Bank, N.A. v. Piccolo Mondo 21st Century, Inc.*, 949 N.Y.S.2d 444, 447 (2d Dept. 2012).

for the consolidated $2.15 million note nor agree to be held personally liable on the note. The Court, as the finder of fact, must determine what weight to assign Defendant Martin's testimony. Defendant Martin clearly has a significant personal stake in the outcome of this litigation. Nonetheless, Defendant Martin's testimony was forthright at times. However, his admitted lack of recollection and knowledge regarding the documents and events central to this dispute undermined the persuasiveness of much of his testimony. Defendant Martin testified that he did not review the closing documents he executed prior to or following the closing. Tr. at 186. When he was asked to describe what happened at the time of closing, Defendant Martin responded, in part: "[An attorney] told me it was a big day for me, showed me a million papers to sign and I signed them and I was on my way." *Id.* at 173. When his counsel presented him with the Consolidated Note he signed, Defendant Martin expressed neither familiarity with the note nor personal recollection of having signed it, stating "I don't know what it is other than I'm reading it." *Id.* at 180. When Plaintiff's counsel presented Defendant Martin with the First Mortgage and asked whether he signed it, he again expressed no personal recollection of executing the document, stating: "It looks like it – my older signature. Yes." *Id.* at 184. Other portions of Defendant Martin's testimony, such as his statements that he spoke to his broker and Mr. Pierre regarding his personal obligations under the Consolidated Note, were at best self-serving and unsubstantiated, and in the case of Mr. Pierre, in direct conflict with Mr. Pierre's deposition testimony.[5] In light of the foregoing, the Court does not credit Defendant Martin's testimony that he did not execute the Payment Guaranty.

---

[5] Mr. Pierre denied having any conversations with Defendant Martin with respect to the personal guaranty or to the effect that the only debtor on the Consolidated Note was Skyline. *Id.* at 142-43.

Further, Defendant Martin provides no explanation as to how his signature appeared on the document if he did not sign it. He produced no evidence of forgery. He testified at trial that the signature on the Payment Guaranty appears to be his.[6] Despite Defendant Martin's arguments to the contrary, he had ample opportunity prior to trial to inspect the original Payment Guaranty and to have an expert perform a forensic examination of the document if he so desired. Defendant Martin's counsel briefly inspected the original document when presented with it and requested no further examination or discovery related to it.[7]

Defendant Martin seems to suggest that if his signature on the Payment Guaranty is genuine, it was somehow improperly attached to the Payment Guaranty or substituted from some other document because of its placement on the last page of the document. This claim is unsupported by the record. The page bearing Defendant Martin's signature includes a caption

---

[6] In his affidavit in opposition to Plaintiff's motion for summary judgment, Defendant Martin also acknowledged the apparent genuineness of the signature, stating "I cannot say that it is a forgery since the signature appears to be mine." Dkt. No. 27 at 2.

[7] Defendant Martin's contention that Magistrate Judge Treece's Memorandum-Decision and Order limited his ability to inspect or request further discovery regarding the original Payment Guaranty is unavailing. *See* Tr. 199-201. Plaintiff notified Defendant of the availability of the original document for inspection on September 26, 2011. Dkt. No. 40-2. As Magistrate Judge Treece noted, "[i]nstead of exercising their right to inspect the documents, Defendants served a Notice for a Rule 30(b)(6) deposition upon the Plaintiff, seeking further 'all documents and tangible things relating to the subject matter of this action.'" Dkt. No. 47 at 4. Further noting that "[i]t is unreasonable to expect that a window of opportunity to examine this document with the assistance of an expert will forever be available," Magistrate Judge Treece nonetheless ordered Plaintiff to produce the original Payment Guaranty for Defendant Martin's inspection concurrent with the deposition of Mr. Pierre. *Id.* at 6-7. Plaintiff complied with this order and, as noted above, Defendant Martin actually inspected the original document. Tr. at 106-07. Further, the Court adjourned this bench trial on September 3, 2014 for the specific purpose of permitting the parties to complete any necessary outstanding discovery, particularly expert discovery. Defendant Martin raised no discovery issue to the Court between that adjournment and the October 1, 2014 trial date. Therefore, Defendant Martin's argument at this late date that his ability to perform discovery related to the original Payment Guaranty was inappropriately limited is entirely contradicted by the record.

which reads "Payment Guaranty - New York (Multistate)" and "Page 5," text which reads "In witness whereof, Guarantor has signed and delivered this Guaranty or has caused this Guaranty to be signed and delivered by its duly authorized representative," and a line above Defendant Martin's signature which reads "Guarantor." Plf's Exh. 8 at 5. Thus, the signature page clearly identifies itself as part of a payment guaranty executed by Defendant Martin as guarantor. Further, Defendant Martin introduced no evidence in support of his claim that the document he signed was improperly modified or altered.[8] In sum, Defendant's "bald assertion of forgery" cannot overcome the evidence that his signature on the Payment Guaranty is genuine. *Brosnick v. Brisman*, 819 N.Y.S. 2d 492, 493 (1st Dept. 2006) (quotation omitted); *see also OEC Freight (N.Y.), Inc.*, 2011 WL 5513445 at *2 (finding that the plaintiff proved a signature authentic by a preponderance of the evidence where the defendant's theories as to how the signature originated were unsubstantiated and implausible).

To the extent that Defendant Martin argues that the Payment Guaranty is authentic, but that he did not understand the legal consequences of what he was signing or that Plaintiff failed to explain adequately the terms of the refinance, his claims do not constitute a basis upon which to deny Plaintiff recovery on the guaranty. "As a general rule, the signer of a written agreement is conclusively bound by its terms unless there is a showing of fraud, duress or some other wrongful act on the part of any party to the contract." *Columbus Trust Co. v. Campolo*, 487 N.Y.S. 2d 105, 107 (2nd Dept. 1985) (rejecting the plaintiff's alleged failure to fully explain the terms and legal ramifications of a payment guaranty executed by the defendant as a valid ground for denying the

---

[8] As to Defendant Martin's production of three copies of the Payment Guaranty submitted to the Court's electronic filing system, on which all or part of Defendant Martin's social security number and the loan number were redacted, the Court reiterates that proper redaction of personal identifying and financial information on exhibits submitted to the Court pursuant to Local Rule 8.1 does not constitute mutilation or amendment.

plaintiff summary judgment on the guaranty). Defendant Martin has produced no competent evidence of fraud or duress. His own testimony established that he has participated in numerous real estate transactions and that he waived the right to have an attorney present at the closing because he "was hungry for the check" and did not review the closing documents when he executed them. Tr. at 182. In the absence of evidence of any wrongdoing, he is bound by the terms of the Payment Guaranty that he executed.

Plaintiff has therefore established entitlement to a deficiency judgment against Defendant Martin.

## C.    The Assignment's Incorporation of the Payment Guaranty

Defendant Martin also argues that even if the Payment Guaranty is authentic, Plaintiff does not have standing to pursue a deficiency judgment against Defendant Martin because the assignment of the mortgage and note from Greystone to Plaintiff did not include the Payment Guaranty.

Standing involves an inquiry into "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The plaintiff bears the burden of establishing standing. *Id.* In order to satisfy the "'irreducible constitutional minimum of standing'" required by Article III of the Constitution, a plaintiff must show "'an injury in fact . . . which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff must also satisfy the prudential standing rule, which "'bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves'" and requires the plaintiff to "'assert his own legal rights and interests,'" rather than "'rest his claim

to relief on the legal rights or interests of third parties.'" *Id.* at 86 (quoting *Warth*, 422 U.S. at 509).

Under New York law, only the parties to and intended third-party beneficiaries of a contract have standing to enforce the contract. *Id.* (citing *Mendel v. Henry Phipps Plaza W. Inc.*, 6 N.Y.3d 783, 786 (2006)); *see also E. W. Bank v. 32 Tower, LLC*, No. 30798/10, 2011 WL 5515436, *4 (N.Y. Sup. Ct. Nov. 9, 2011) ("In order to have standing to challenge or enforce a contract, an entity must be a party thereto or a third-party beneficiary thereof" (citations omitted)). If a valid assignment of a contract is made, "the assignee steps into the assignor's shoes and acquires whatever rights the latter had." *In re Estate of Stralem*, 758 N.Y.S. 2d 345, 347 (2d Dept. 2003). A valid assignment requires "'a completed transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned.'" *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558 (2d Cir. 1976) (quoting *Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.*, 199 N.Y.S.2d 852, 855 (4th Dept. 1960)). "No particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 88 (1994).

Plaintiff has clearly shown a particularized, actual injury in the form of the loan default, which satisfies the constitutional standing requirement. Since Greystone was a party to the Payment Guaranty, Plaintiff has standing to enforce the guaranty – and has satisfied the prudential standing requirement – if the assignment of the guaranty to Plaintiff was valid.

The Court finds that the Bill of Sale and Assignment effected a valid assignment of the Payment Guaranty to Plaintiff. The Bill of Sale and Assignment provides that Greystone

>        hereby sells, assigns and transfers unto [Plaintiff] . . . all right, title
> and interest of Assignor in, to and under or arising out of [the Consolidated Note], secured by real
> property known as 4 Skyline Drive, Saugerties, NY 12477, together with all right, title and
> interest of Assignor in, to and under or arising out of:
>
> >        (1) the Loan Documents;
> >
> >        (2) *all guaranties* . . . and other documents executed and/or
> >    delivered to Assignor in connection with the Loan;
> >    . . . .
> >
> >        To have and to hold the same unto Assignee, its successors
> >    and assigns, forever.

Plf's Exh. 10 (emphasis added).  This language unambiguously transferred Greystone's entire

interest in all guaranties executed in connection with the Consolidated Note and mortgage to

Plaintiff.  *See Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008) ("[T]he best evidence of

what parties to a written agreement intend is what they say in their writing" (citation omitted)).[9]

Even were the Court to consider parol evidence of the parties' intent, Ms. Berman and Mr.

Ryzman both repeatedly testified that the intent of the parties was to transfer the Payment

Guaranty to Plaintiff.

        Defendant Martin argues that in this instance, "guaranties" refers to the representations

and warranties made by Greystone to Plaintiff in the Sales Agreement as to Greystone's legal

ownership of and right to transfer the Consolidated Note and mortgage.  The Court finds this

---

        [9] In its March 11, 2013 Memorandum-Decision and Order, the Court found ambiguity as
to the assignment of the Payment Guaranty in the Skyline Consolidated Mortgage, the Payment
Guaranty itself, and the Skyline Mortgage Assignment.  Dkt. No. 57 at 12.  The Bill of Sale and
Assignment, which the Court finds unambiguous, was not before the Court at that time.  The
express statement in the Bill of Sale and Assignment that "all guaranties" were assigned to
Plaintiff also distinguishes this case from *East West Bank v. 32 Tower, LLC*, in which the New
York Supreme Court, Kings County, found that an assignment of mortgage instruments did not
assign the guaranties executed by the defendants where the assignment made no express mention
of guaranties and the plaintiff relied on language assigning all "unrecorded documents evidencing
indebtedness secured by the Mortgages" to argue the assignment included the guaranties.  2011
WL 5515436 at *4-5.

argument to be meritless.  Ms. Berman explained that Greystone's own representations and warranties as seller to Plaintiff are not generally referred to as "guaranties" and were not something that Greystone could assign to Plaintiff.  Tr. at 86.  Defendant Martin also argues that the Bill of Sale and Assignment should be viewed as a mere receipt confirming the sale between Greystone and Plaintiff, not effectuating a transfer of assets.  Defendant Martin's argument ignores that the document is both a bill of sale and an assignment.  To the extent that Defendant Martin argues that the Sale Agreement should be viewed as the controlling document, the Court finds no evidence in support of this argument.  Defendant Martin's own expert, Mr. Zucker, and Ms. Berman both testified that the document which actually transfers an asset between parties is the assignment.

Finally, Defendant Martin argues that only the Skyline Mortgage Assignment, which does not specifically assign guaranties, should be viewed as transferring assets to Plaintiff.  Defendant Martin provides no evidence in support of this claim.  Ms. Berman provided a credible explanation as to why Greystone prepared two separate assignments.  Mr. Zucker testified that the mortgage assignment need not necessarily assign the guaranty and that under similar circumstances, he would either include the guaranty assignment language in the mortgage assignment or prepare a separate assignment assigning the guaranty, as Greystone did here.  The Court finds no basis for concluding that both assignments are not effective.

Since the Court finds Greystone's assignment of the Payment Guaranty to Plaintiff valid, Plaintiff has established standing to maintain this action against Defendant Martin.

## IV.  PLAINTIFF'S PROPOSED ORDER

Also presently before the Court is Plaintiff's proposed order of deficiency judgment as to Skyline.  In its Memorandum-Decision and Order dated June 11, 2014, discussed above, the

Court directed Plaintiff to submit a proposed order of deficiency judgment pursuant to 22 N.Y.C.R.R. § 202.48.  Dkt. No. 79 at 12-13.  Plaintiff submitted its proposed order to the Court on July 8, 2014.  Dkt. No. 82.  By letter dated July 21, 2014, Defendants requested that the Court hold the proposed judgment in abeyance to permit the parties to revisit the deficiency judgment in light of Justice Sotomayor's concurrence to the unanimous opinion in *Robers v. United States*, 134 S. Ct. 1854 (2014), or submit supplemental briefing addressing the *Robers* decision.  In that concurrence, Justice Sotomayor wrote that, in the context of the Mandatory Victims Restitution Act of 1996, a crime victim that decides to retain collateral as an investment rather than sell it within a reasonable amount of time must bear the risk of a subsequent decline in the collateral's value.  134 S. Ct. at 1860-61.  This concurrence does not alter the law on the availability of an affirmative defense of failure to mitigate damages in a mortgage foreclosure action, and Defendants may not raise this defense for the first time in their objection to Plaintiff's proposed order, which is consistent with the Court's Memorandum-Decision and Order.  In the interest of efficiency, rather than sign Plaintiff's proposed order, the Court will incorporate the relevant provisions below.

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for leave to file a deficiency judgment as to Defendant Martin is **GRANTED**; and the Court further

**ORDERS** that, pursuant to New York Real Property Actions and Proceedings Law § 1371, the Clerk of the Court shall enter a deficiency judgment against Defendants Skyline Woods Realty, LLC, and Howard Martin, in the amount of $1,960,707.57 with interest thereon from July 22, 2013, and Plaintiff shall have execution therefor; and the Court further

**ORDERS** that, pursuant to New York Real Property Actions and Proceedings Law § 1371(4), all monies remaining in the hands of the receiver of the rents and profits appointed in this action, after the payment of the receiver's fees and the expenses of the receivership, shall be paid to Plaintiff to the extent of the amount of the deficiency determined herein, of $1,960,707.57; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 10, 2014
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

27